**PIPPIN v. STATE.** (4 Div. 895.)

(Court of Appeals of Alabama. July 14, 1923. Rehearing Denied Oct. 16, 1923.)

**1. Homicide ⬤⟞135(1)—Indictment held not subject to objections of not alleging the means of killing or how deceased was killed.**

Indictment charging that defendant killed J. by driving an automobile against a wagon on which J. was riding, and knocking him therefrom, held not subject to' demurrer on the grounds of not alleging the means or instrument used to effect the death, and not showing whether J. was killed by the driving of the automobile against the wagon or by being knocked from the wagon.

**2. Homicide ⬤⟞169(1)—Evidence of conduct and statement before running auto into wagon admissible to show reckless disposition and driving.**

Evidence that, shortly before defendant ran his automobile into deceased's wagon, he swerved his car towards the left, as he was meeting another car, and said, "Watch me * * * make them take the ditch," and again swerved his car towards boys on bicycles, and laughed as he made them leave the road, held admissible as tending to show reckless disposition and reckless driving.

**3. Homicide ⬤⟞272—Whether defendant was so driving auto as to be guilty of misdemeanor question for jury under evidence.**

Whether defendant, when he ran his auto into a wagon, killing the driver, for whose death he is prosecuted, was operating his car recklessly, or at a speed greater than was reasonable and proper or such as would endanger life or limb of any person, and so under Acts 1911, p. 634, was in the commission of a misdemeanor, held under the evidence a question for the jury.

**4. Homicide ⬤⟞62, 74—"Manslaughter" in second degree defined.**

Killing of a human being without malice, and without intent to kill or inflict the injury causing death, committed either in the negligent performance of an act lawful in itself or while in the commission of a misdemeanor, is manslaughter.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Manslaughter.]

**5. Homicide ⬤⟞341—Refusal of the affirmative charge as to degrees of crime higher than that of which defendant was convicted, harmless.**

Defendant having been convicted of second degree manslaughter cannot complain of refusal of the affirmative charges as to murder and first degree manslaughter.

**6. Homicide ⬤⟞309(6)—Requested charges held to require proof of matters not necessary for second degree manslaughter.**

Requested charges held properly refused, as requiring proof of matters not necessary for second degree' manslaughter, namely, willful and intentional driving of car against wagon and conduct so grossly negligent as to imply a criminal intent.

**7. Homicide ⬤⟞304—Requested charge objectionable as not predicated on the evidence.**

Requested charge that, if the striking of deceased or the wagon with defendant's automobile was accidental, the jury cannot convict, held objectionable, as not predicated on the evidence.

---

**8. Homicide ⬲299(1)—Requested charge held misleading and bad in requiring too high a degree of negligence for second degree manslaughter.**

Requested charge requiring for conviction of second degree manslaughter that the jury be convinced that defendant at the time of the alleged homicide was violating the law or was guilty of such gross negligence as to imply criminal intent *held* both misleading and to require too high a degree of negligence.

**9. Homicide ⬲289—Requested charge that driving car on highway at high speed is not per se violation of law held misleading.**

Requested charge in a homicide case that the driving of said automobile along the highway at a high rate of speed is not per se a violation of law *held* misleading; driving at a high rate of speed may be negligence in some circumstances.

**10. Homicide ⬲309(1)—Requested charges held faulty in view of elements of second degree manslaughter.**

Requested charges in homicide case *held* faulty; it not being necessary to constitute second degree manslaughter that the driving over or against deceased should have been intentional or so grossly negligent as to imply intent, and acquittal of such offense not being authorized by a reasonable doubt merely that the homicide was accidental.

**11. Homicide ⬲268—Affirmative charge properly refused on conflicting evidence.**

There having been a conflict in the evidence, and ample evidence to justify a conviction of manslaughter in the second degree, defendant was properly refused the affirmative charge.

**12. Criminal law ⬲871(1, 2)—Verdict need not be signed by foreman.**

It is not essential that the verdict be signed by any one as foreman; but the jury may announce it to the court ore tenus or on paper.

**13. Criminal law ⬲995(2)—Recital of verdict in judgment prima facie correct.**

The recital of the verdict in judgment is prima facie correct.

Appeal from Circuit Court, Geneva County; H. A. Pearce, Judge.

Ed Pippin, alias, etc., was convicted of manslaughter in the second degree, and appeals. Affirmed.

These charges were refused to defendant:

"3. The court charges the jury that before they can convict the defendant under this indictment they must be convinced beyond all reasonable doubt that the defendant intentionally and willfully drove his automobile against the wagon upon which deceased was riding, or that his conduct at the time was of such nature as be so grossly careless as to imply a criminal intent.

"4. The court charges the jury that before you are authorized to convict the defendant of any offense under the indictment you must be convinced beyond all reasonable doubt that the defendant willfully or intentionally drove the automobile against the wagon upon which deceased was riding, or that he drove said automobile so grossly negligent as to imply a criminal intent.

"5. The court charges the jury that unless they believe from the evidence, beyond all reasonable doubt, that the defendant drove the car over the deceased, or against the deceased, or against a wagon on which the deceased was riding, intentionally, then you should find the defendant not guilty.

"6. The court charges the jury that if the striking of deceased with the automobile driven by defendant, or the striking of the wagon by the car driven by defendant, was accidental, then you cannot convict the defendant.

"7. The court charges the jury unless they are convinced from the evidence beyond all reasonable doubt that the defendant at the time of the alleged homicide was violating the law of the state of Alabama, or guilty of such gross negligence as to imply criminal intent, then they cannot convict the defendant under this indictment.

"8. The court charges the jury that the driving of said automobile along the highway or public road at a high rate of speed is not per se a violation of the law.

"9. The court charges the jury that they must believe from the evidence, beyond all reasonable doubt, that the running over of deceased, or striking deceased, with the automobile, or driving the automobile against the wagon on which the deceased was riding was intentional on the part of the defendant, and if the jury has a reasonable doubt arising out of all the evidence that the driving over of deceased, or driving against the deceased, or driving the automobile against the wagon upon which the deceased was riding, by the defendant was accidental, then they must find the defendant not guilty.

"10. The court charges the jury that before they can convict the defendant under this indictment they must be convinced beyond all reasonable doubt that the defendant intentionally drove his automobile over the deceased, John Johnson, or against the deceased, John Johnson, or against the wagon upon which the deceased, John Johnson, was riding, or that the defendant drove said automobile so grossly negligent as to imply a criminal intent.

"11. The court charges the jury that before they can convict the defendant under this indictment they must be convinced beyond all reasonable doubt that the defendant intentionally drove his automobile over the deceased, John Johnson, or against the deceased, John Johnson, or against the wagon upon which the deceased was riding, or that the defendant drove said automobile so grossly negligent as to imply a criminal intent, and the burden is upon the state to convince you beyond all reasonable doubt of guilt of the defendant.

"12. The court charges the jury that before they can convict the defendant under this indictment they must be convinced beyond all reasonable doubt that the defendant intentionally drove his automobile over the deceased, John Johnson, or against the deceased, John Johnson, or against the wagon upon which the deceased, John Johnson, was riding or that defendant drove said automobile so grossly neg-

⬲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

19 ALA.APP.—25

ligently as to imply a criminal intent, and, unless the state has so satisfied you, you should acquit the defendant."

E. C. Boswell, of Geneva, for appellant.

The third count of the indictment was subject to demurrer. Code 1907, § 7338; Horton v. State, 53 Ala. 488; Danner v. State, 54 Ala. 127, 25 Am. Rep. 662; 94 Ala. 55, 10 South. 522; 79 Miss. 511, 31 South. 102; 15 Ala. App. 311, 73 South. 201; 32 Ala. 583; 183 Ala. 79, 63 South. 163; 137 Ala. 47, 34 South. 683. The refusal of charges 3, 4, 5, 7, 9, 10, 11, 12, requested by defendant, was error to reverse. Fitzgerald v. State, 112 Ala. 34, 20 South. 966. Charge 8 was erroneously refused. Acts 1911, p. 634, § 21.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

The indictment was not subject to demurrer. Code 1907, p. 673, form 76; 1 Mayf. Dig. 639. A charge not requiring the finding of the jury to be based upon the evidence is properly refused. Edwards v. State, 205 Ala. 160, 87 South. 179.

FOSTER, J. [1] The indictment contained three counts. The case was submitted to the jury on the third count, which charged that the defendant unlawfully and with malice aforethought killed John Johnson by driving an automobile against a wagon on which the said Johnson was riding, and knocking him therefrom. Demurrers were interposed to the third count on the grounds that it did not allege the means or instrument used to effect the death of the deceased, and that it did not show whether the deceased was killed by the driving of an automobile against the wagon or by being knocked from the wagon.

The indictment charges that the automobile driven against the wagon knocked the deceased therefrom. The instrument of death was the automobile in the control of, and operated by, the defendant. The indictment fully informed the defendant that he was charged with driving an automobile against a wagon in which deceased was riding and in this manner knocking the deceased therefrom and killing him. The indictment was sufficient. The court properly overruled the demurrer.

The defendant was convicted of manslaughter in the second degree.

The evidence for the state tended to show that the defendant drove his automobile along the public road at a high rate of speed—about 40 miles an hour—at the time and place of the accident; that the deceased and two boys were riding in a wagon along the road going in the same direction the defendant was driving his car; that defendant approaching from the rear drove his automobile against the rear wheel of the wagon, in this manner knocking the deceased therefrom

and killing him; that the wagon was on the extreme right of the road and there was sufficient room for two cars to pass abreast in the road on the left of the wagon. There was some evidence that some distance up the road just a short time before the accident defendant had swerved his car to the left when meeting a car approaching him and had called attention of those with him to how he was going to make that car take the ditch, and also that just before the accident two boys were riding bicycles along the road and he had run both of them out of the road and laughed as he did so.

The defendant contended that the road was very dusty and he did not see the wagon until about the time he struck it; that he was driving at the rate of 20 or 25 miles an hour, and as soon as he saw the wagon he turned quickly to the left, and his fender struck the wheel of the wagon.

[2] It was competent to show that defendant, while driving his car along the road toward the place where he killed the deceased, upon meeting another car, swerved his car to the left, and said, "Watch me, and see how I will make them take the ditch," as tending to show his reckless disposition and manner of driving shortly before the time of the accident. Williams v. State, 17 Ala. App. 285, 84 South. 424.

It is also competent to show that continuing his journey along the road just before defendant reached the place of the killing he was driving his car at the rate of 40 miles an hour and swerved in the direction of two boys riding bicycles and laughed as he made them leave the road, as tending to show reckless driving. Williams v. State, supra.

[3] Section 21, Act of Legislature (Acts 1911, p. 634) reads:

"No person shall operate a motor vehicle upon the public highways of this state recklessly, or at a rate of speed greater than is reasonable and proper, having regard to the width, traffic and use of the highway, or so as to endanger property, or the life or limb of any person; provided that a rate of speed in excess of thirty miles per hour for a distance of a quarter of a mile shall be presumed evidence of traveling at a rate of speed which is not careful and prudent."

It was the duty of the defendant upon overtaking the wagon to pass on the left side. Section 20, Acts 1911, p. 634. The above act declares it a misdemeanor to operate a motorcar in violation of the provisions of the act.

In the instant case it was clearly a question for the jury under the evidence to determine whether the operation of the car at the rate of 40 miles an hour at the time of the accident (if they believed from the evidence, beyond a reasonable doubt, that it was so operated) was reckless, or was such rate as was greater than was reasonable and

proper, or such rate as would endanger the life or limb of a person.

If the jury determined from the evidence that the defendant was operating his car at the time of the accident at such rate of speed as would endanger life or limb of a person, then the defendant was guilty of a misdemeanor.

[4] The killing of a human being without malice, the slayer being at the time in the commission of a misdemeanor, and not having the intent to kill or to inflict the injury causing death, is manslaughter in the second degree. 1 Mayf. Dig. p. 639, pars. 7 and 8.

The killing of a human being without malice, and without the intent to kill or to inflict the injury causing death, committed in the negligent performance of an 'act lawful in itself, is manslaughter in the second degree. 1 Mayf. Dig. p. 639, pars. 7 and 8.

[5] The defendant cannot complain of the refusal of charge 1 (the affirmative charge as to murder) and charge (2) (the affirmative charge as to manslaughter in the first degree), as he was convicted of manslaughter in the second degree and thereby acquitted of murder and manslaughter in the first degree.

[6] Charges 3, 4 and 5 were properly refused. It was not necessary that defendant should have willfully or intentionally driven his car against the wagon, nor was it necessary that his conduct should have been so grossly negligent as to imply a criminal intent, in order to constitute manslaughter in the second degree. 1 Mayf. Dig. p. 639, pars. 7 and 8.

[7] Charge 6 was not predicated on the evidence and was properly refused. Edwards v. State, 205 Ala. 160, 87 South. 179.

[8] Charge 7 was properly refused. It is misleading, and it was not necessary that the defendant should have been guilty of such gross negligence as to imply criminal intent in order to convict of manslaughter in the second degree.

[9] Charge 8 is misleading. Driving at a high rate of speed may be negligence in some circumstances.

[10] Charges 9, 10, 11, 12 are faulty. It is not necessary that the driving over or against deceased should be intentional, or so grossly negligent as to imply criminal intent, to constitute manslaughter in second degree. And the jury are not authorized to acquit if they have a reasonable doubt that the homicide was accidental. It may have been unintentional and accidental, but if done in the commission of an unlawful act, or in the negligent performance of an act lawful in itself, the defendant may be convicted of manslaughter in the second degree. 1 Mayf. Dig. p. 639, pars. 7 and 8.

[11] Charge C (the affirmative charge for the defendant) was properly refused. There was a conflict in the evidence, and there was ample evidence to justify a conviction of manslaughter in the second degree.

The defendant cannot complain of the refusal of charges D and E, the affirmative charge as to murder, and F, the affirmative charge as to manslaughter in the first degree, as the defendant was convicted of manslaughter in the second degree and thereby acquitted of murder and manslaughter in the first degree.

[12, 13] The verdict of the jury as shown by the record is as follows:

"We the jury find the defendant guilty of manslaughter in the second degree and fix his punishment at one year hard labor for the county and assess a fine of $150 against him."

It is not essential that the verdict of the jury be signed by any one as foreman. The jury may announce it to the court ore tenus or upon paper, and the recital contained in the judgment is prima facie correct. The verdict was sufficient. State v. Underwood. 2 Ala. 744.

The motion for a new trial was properly overruled.

We find no error in the record, and the judgment of the circuit court is affirmed.

Affirmed.