Embezzlement, sentence: one year and one day imprisonment.
The appellant, Mayor of Hobson City, Alabama, was indicted by the October 1977 Grand Jury of Calhoun County on one count of forgery and one count of embezzlement. Both charges involved check in the amount of $171.69 dated October 31, 1974, issued by the town of Hobson City to William Malone. The check was signed by the appellant and the City Clerk, Margaret *Page 380 
Ball, and was endorsed in the names of William Malone and the appellant.
William Malone testified that he had previously been employed by Hobson City as the fire chief. He left the employment of Hobson City in September 1974 and moved out of state. He testified that he was not working for Hobson City at the time the check was issued, and that he did not receive any proceeds of the October 31, 1974 check. William Malone testified that he did not endorse his name on the check, nor did he give the appellant permission to endorse his name on any check.
The appellant testified that William Malone's salary as fire chief had been paid through a federal grant program made available by the state. He said that in September 1974 William Malone was having some personal problems in Tennessee and had to stay in Tennessee periodically to take care of the problems. Don Malone, William Malone's brother, asked the appellant if he could work gratuitously in the place of his brother during the times that he would be absent so that William Malone would continue to be paid. Appellant testified that, since there was only a few pay periods left under the federal grant contract, he agreed. He testified that as per the agreement he had William Malone's permission to endorse his name on the checks and turn the proceeds over to Don Malone.
Don Malone testified that he did not receive the proceeds from the October 31, 1974 check. The State also introduced into evidence a statement made by the appellant wherein he denied endorsing William Malone's name to the check.
 I
Appellant contends that Count I of the indictment charging him with forgery of a check was insufficient as to place him on notice of whether he was to be prosecuted for first degree forgery or second degree forgery.
Appellant was indicted under a two count indictment, but was convicted only of the embezzlement count thereby acquitting him of the forgery count. Liner v. State, Ala.Cr.App.,350 So.2d 760 (1977). This court will not consider alleged errors pertaining to a count as to which there was an acquittal. Only the count upon which an appellant is found guilty is subject to review on appeal. Hammond v. State, Ala.Cr.App., 354 So.2d 280, cert. denied, Ala., 354 So.2d 294 (1977); Liner, supra.
 II
Appellant claims that the embezzlement count of the indictment did not sufficiently inform him of what he was being charged of embezzling.
The proper procedure to challenge the validity of an indictment is by demurrer. Andrews v. State, Ala.Cr.App.,344 So.2d 533, cert. denied, Ala., 344 So.2d 538 (1977). This the appellant did not do, and he now raises this issue for the first time on appeal. Ordinarily one waives any irregularities in the indictment by appearing and pleading in the trial court, and a plea to the merits is considered as an admission of a valid indictment. Johnson v. State, 49 Ala. App. 389,272 So.2d 597 (1973); Elliott v. State, 39 Ala. App. 314, 98 So.2d 618
(1957). "However, due process dictates that a defect associated with an essential element of the offense which leaves the accused unaware of the nature and cause of the charge against him cannot be waived by failure to timely demur." Andrews v.State, supra. Such a fatal defect is not present in the instant indictment.
The appellant specifically contends that the indictment does not allege in which jurisdiction the offense was committed, does not allege appellant's official capacity, his control of monies, or that the monies belonged to any municipality. The pertinent portion of Count II of the indictment states that:
 "The Grand Jury of Calhoun County further charge that, before the finding of this indictment, J.L. Stringer, also known as Judge L. Stringer, whose true name is to the Grand jury otherwise unknown, *Page 381 
Mayor of Hobson City, Alabama, a city incorporated under the laws of the state, embezzled or fraudulently converted to his own use a check in the amount of $171.69, which said check represented funds belonging to or under the control of said city. . . ."
First, it is unnecessary to allege in an indictment where the offense was committed. Title 15, § 238, Code of Ala. 1940 (§15-8-31, Code of Ala. 1975). Second, it is plainly stated that appellant is "Mayor of Hobson City" and that the "check represented funds belonging to or under the control of said city." Count II of the indictment substantially follows both Title 14, § 126, Code of Ala. 1940 (§ 13-3-20, Code of Ala. 1975) and Title 14, § 127, Code of Ala. 1940 (§ 13-3-21, Code of Ala. 1975). It charges every material element of the offense of embezzlement and sufficiently informs appellant of the charge against him. Appellant also contends that the indictment should have charged embezzlement of money and not of a check. Title 14, § 146, Code of Ala. 1940 (§ 13-3-39, Code of Ala. 1975) states that: "In an indictment for embezzlement . . . it is sufficient to describe the property in general terms, as . . . `checks' . . . of or about a certain amount."
We find no defect in the indictment rendering it void and subject to challenge in any manner other than by way of demurrer timely filed in the trial court. The appellant failed to file a proper and timely challenge, and no error can thus be attributed to the trial court in this regard. Stehl v. State,283 Ala. 22, 214 So.2d 299 (1968).
 III
The district attorney called himself as the State's last witness. He was examined by an assistant district attorney. He testified, over appellant's objection, that in a telephone conversation with appellant several months after the indictment had been handed down and approximately four months before trial appellant admitted endorsing William Malone's name as well as his own to the check in question. Appellant claims three issues of error concerning this testimony.
 A
Appellant contends that the district attorney should not have been allowed to testify in the case and also continue to prosecute the case. The rule governing such procedure is stated in Maund v. State, 254 Ala. 452, 48 So.2d 553 (1950):
 ". . . `Although a prosecuting attorney is competent to testify, his testifying is not approved by the courts except where it is made necessary by the circumstances of the case, and, if he knows before the trial that he will be a necessary witness, he should withdraw and have other counsel prosecute the case. The propriety of allowing the prosecutor to testify is a matter largely within the trial court's discretion. . . .'"
There is no evidence in the record that the district attorney formed the intention to testify in advance of trial. While we do not encourage testimony by any prosecuting attorney, we cannot go so far as to say the trial court committed reversible error by allowing the prosecutor to testify in this case. One of the examples set out in Maund, supra, where the prosecuting attorney was allowed to testify is "`. . . to show admissions made by the defendant to him. . . .'" That was the circumstances in this case, and we find no abuse of discretion on the part of the trial court in allowing the testimony.
 B
The appellant contends that the district attorney should have given him the Miranda[1] warnings after contacting him and before questioning him when an indictment had been handed down in the case and several months had elapsed since the original Miranda warnings were given.
The prosecutor initiated the telephone call to appellant to ask if appellant would, through city records, provide the district *Page 382 
attorney's office with handwriting samples of William and Don Malone and himself for comparison purposes. In answer to the district attorney, the appellant stated that the district attorney's office was welcome to whatever records were needed, but that it was unnecessary because he had signed William Malone's name as well as his own to the back of the check. His response was not in answer to a specific question concerning whether he had signed William Malone's name to the check. Neither was this a "custodial interrogation."
The intention of the Miranda decision was "to prevent oppressive police tactics which violate individual rights and produce involuntary confessions." Schaumberg v. State, 83 Nev. 372, 432 P.2d 500 (1967). Miranda dealt with custodial police interrogation. Sprinkled throughout Miranda were the phrases: "over-zealous police practices," "police dominated atmosphere," "unfamiliar atmosphere," "menacing police interrogation procedures," and "in-custody questioning."
In the instant case, the district attorney and appellant were in the comfort and privacy of their individual offices. The admission took place during a telephone conversation while the appellant was neither in custody nor subject to oppressive police tactics. In addition, the admission was a volunteered statement, not in response to a question calling for such an answer. The appellant's freedom of action was not limited or curtailed, and he was free to terminate the conversation at any time. As stated in Miranda (86 S.Ct. at p. 1630):
 ". . . Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. . . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."
We do not think the circumstances surrounding appellant's admission substantially affected his individual will to resist.
 C
The appellant's last contention concerning the telephone conversation is that his admission should have been suppressed because the district attorney was under an ethical obligation to contact appellant's attorney before contacting appellant.
In Simpson v. Alabama State Bar, 294 Ala. 52, 311 So.2d 307
(1975), the Alabama Supreme Court held that district attorneys were not subject to discipline under the disciplinary rules in effect at that time. However, the Court specifically stated the question of whether or not district attorneys could be disciplined under the then proposed Code of Professional Responsibility (now in effect) was not before them.
The Michigan Supreme Court in People v. Green, Mich.,274 N.W.2d 448 (1979), held that district attorneys are subject to their Code of Professional Responsibility under DR 7-104 (A)(1), but held that reversal of a conviction solely because of an ethical violation "would constitute reprehensible `overkill.'" Alabama's DR 7-104 (A)(1), which is identical to Michigan's, is in pertinent part as follows:
"DR 7-104 Communicating With One of Adverse Interest.
 "(A) During the course of his representation of a client a lawyer shall not:
 "(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so."
Whether the district attorney was under an ethical obligation to contact the appellant's attorney has no bearing on the admissibility of the statement. Likewise, we find it unnecessary to rule on whether a district attorney is subject to the Alabama. Code of Professional Responsibility. As stated in People v. Green, supra:
 ". . . The provisions of the code [Code of Professional Responsibility] are not constitutional or statutory rights guaranteed to individual persons. They are instead self-imposed internal regulations prescribing the standards of conduct for members of the bar.
. . . . . *Page 383 
 "The admissibility of evidence in a court of law, on the other hand, is normally determined by reference to relevant constitutional and statutory provisions, applicable court rules and pertinent common-law doctrine. Codes of professional conduct play no part in such decisions." (Bracketed material added.)
On a similar question, this court in Alexander v. State, Ala.Cr.App., 370 So.2d 330 [Ms. March 6, 1979], stated:
 "`The fact that a defendant has an attorney does not mean, as a per se rule, that law enforcement officials cannot procure a statement of any kind from the defendant without prior notice to, if not the consent of, the attorney.' This rule was fully discussed and applied in Thompson v. State, 347 So.2d 1371 (Ala.Cr.App.), cert. denied, 347 So.2d 1377
(Ala. 1977). In Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 1243, 51 L.Ed.2d 424 (1977), the United States Supreme Court implicitly rejected any such `per se' rule."
We have reached the same conclusion in another similar circumstance in Thomas v. State, Ala.Cr.App., 373 So.2d 1149
(1979).
Moreover, the appellant testified at trial that he signed William Malone's name to the check. In fact his whole defense was that he had Malone's permission to sign the check. Our Supreme Court in Boulden v. State, 278 Ala. 437, 179 So.2d 20
(1965), stated:
 "We will observe that this court, along with others, has applied the harmless error doctrine to assertions made that the introduction of evidence of confessions should not work a reversal where the defendants had taken the stand and given testimony substantially in the language of the confessions. . . ."
We reached the same result in Jones v. State, 50 Ala. App. 36,276 So.2d 621 (1973), and in Thomas, supra.
 IV
Appellant contends that the evidence was insufficient to show that municipal funds were unlawfully converted. The State's evidence was that funds were improperly drawn from a city account by appellant for a non-existent obligation. The custodian of the records for the First National Bank of Anniston testified as to the city's account with that bank and identified the check in question as being drawn on the city's account. A microfilmed copy of the October 31, 1974 check was admitted into evidence. Therefore, we think the evidence was sufficient to show a fraudulent conversion of municipal funds. See: Troup v. State, 32 Ala. App. 309, 26 So.2d 611 (1946).
 V
Appellant contends that the trial court improperly allowed into evidence a microfilmed copy of the check upon which this conviction is based. When the microfilmed copy was offered in evidence, the appellant objected on the specific ground that the best evidence rule was violated because the original check was not introduced.
Robert Wayne Underwood testified that he was custodian of the records of the First National Bank of Anniston. He produced and identified a microfilmed copy of a check issued to William Malone by the town of Hobson City dated October 31, 1974. The check was signed by the appellant and City Clerk Margaret Ball. The names of William Malone and appellant were endorsed on the back of the check. Mr. Underwood also identified the Hobson City account number and the type of account. Although appellant argues at length in his brief as to the insufficiency of the State's predicate for introducing the check, he did not specifically object to the predicate at trial.
We find no error in admitting into evidence a microfilmed copy of a check. Title 5, § 145 (5), Code of Ala. 1940, as amended (now § 5-4-5, Code of Ala. 1975), provides:
 "Any bank may cause any or all books and records at any time in its custody . . . to be reproduced by . . . microphotographic process . . . and any reproduction so made . . . shall *Page 384 
have the same force and effect as the original thereof and be admitted in evidence equally with the original . . ."
It is a matter of common knowledge that banks are in the business of handling checking accounts and that copies of cancelled checks are retained by banks during the regular course of their business. They are considered by this court to be bank records. Appellate courts may take judicial knowledge of matters known to the general public. Coley v. W.P. Brown Sons Lumber Co., 251 Ala. 235, 37 So.2d 125 (1948).
 VI A
During the course of the trial, several checks were introduced into evidence to show plan, scheme or motive of appellant concerning the embezzlement of the October 31, 1974 check. The trial court questioned appellant from the bench concerning certain discrepancies in the amounts of the checks. Appellant contends that the trial court erred by placing undue emphasis on those other checks and drawing the jury's attention to them. However, the appellant made no objection to the trial court's questions. This court will not review an alleged error concerning the questioning of a defendant by the court where no objection was made. Hinkle v. State, 50 Ala. App. 215,278 So.2d 218 (1973).
 B
Appellant contends that the trial court erred by allowing into evidence a check dated outside the statute of limitations for embezzlement. The check was dated October 15, 1974, and the instant indictment was returned on October 21, 1977.
When the October 15, 1974 check was offered into evidence, appellant stated that he would interpose the "same objection" as previously taken. The previous objection was to the October 31, 1974 check. Clearly that check was not outside the statute of limitations. The previous objection taken was that the check was "irrelevant, incompetent, immaterial, and it violates the best evidence rule." The grounds that evidence is irrelevant, incompetent, and immaterial are general grounds of objection.Murphy v. State, 42 Ala. App. 60, 151 So.2d 800 (1963). It is obvious that by taking the same objection as taken to the October 31, 1974 check, appellant was not objecting to the statute of limitations issue. The trial court will not be put in error for admitting evidence over a general objection unless the matter is clearly inadmissible for any purpose. Objections to admissions of evidence are unavailing unless appropriate grounds are stated. Rogers v. State, 53 Ala. App. 573,302 So.2d 547 (1974). In the case of Troup v. State, supra, evidence of irregularities occurring prior to the three year statute of limitations was properly admitted in that embezzlement case. In any event, no objection was raised on that ground in the trial court, and that court will not be put in error on grounds not specified. Williams v. State, Ala.Cr.App., 354 So.2d 48, cert. denied, Ala., 354 So.2d 53 (1978).
AFFIRMED.
All the Judges concur.
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).