Second degree manslaughter; sentence: twelve months imprisonment at hard labor for Cullman County and a fine of one cent.
On August 10, 1979, Dwight Allen Evans's tractor-trailer truck collided with a car driven by Carey Brett Weeks. The collision took place on U.S. Highway 278 East in Cullman County at the intersection of College Hill Drive. Evans was subsequently indicted for first degree manslaughter. He stipulated at trial that seventeen-year-old Weeks was killed as a direct result of this head-on collision. Appellant filed a pretrial motion for change of venue which was denied by the trial court.
On the morning of the accident, appellant was returning from a poultry plant in Water Valley, Mississippi, where he had delivered crates of live chickens for his employer, Hazelrig Fruit Poultry Company, Inc. Appellant admitted that between 8:30 and 9:00 a.m. he drank one-third of a pint of vodka just before driving back to Alabama. He stated that this was the only alcohol he drank on the day of the accident. Appellant made no stops during the return trip except at the truck scales on the Mississippi-Alabama state line.
At approximately 2:00 p.m. appellant was traveling east at about 50 m.p.h. on the two-lane side of a three-lane section of U.S. Highway 278, east of downtown Cullman. According to the appellant a car suddenly turned out of the St. Bernard College exit, forcing him to "hit" his brakes in order to avoid a collision. Due to the wet highway, saturated from heavy rainfall preceding the accident, appellant's truck jackknifed, skidding across the center line into the westbound lane. There, his truck crashed head-on into Weeks's automobile and catapulted over a car driven by Jerome William Hayes, III. *Page 569 
Dwight Pope, a Cullman police investigator, testified for the State. After visiting the scene of the accident, he went to Cullman Medical Center where the appellant had been taken for emergency treatment. While appellant was lying on a stretcher in the emergency room, Pope asked Evans how fast he had been traveling. Evans answered "fifty or fifty-five m.p.h. or whatever the speed limit was." The prosecutor later introduced a city ordinance prescribing a speed limit of 40 m.p.h. for that particular section of Highway 278.
Jerome William Hayes, III, who was traveling approximately fifty feet behind Weeks's vehicle when the tragedy occurred, testified that he first noticed appellant's truck as it approached the St. Bernard College intersection. He did not see a car turn in front of appellant, but he did observe appellant's truck beginning to jackknife when it reached the college exit. While admitting that he took his eyes off appellant's truck for about fifteen seconds during this sequence of events, Hayes estimated that appellant was traveling at a speed of 55 m.p.h.
A state toxicologist, Chip Walls, testified that an analysis of appellant's blood taken at the hospital one hour after the accident occurred revealed 0.06% ethyl alcohol. He explained that a person with this blood-alcohol content would normally exhibit some mental confusion, loss of ability to concentrate, and critical judgment would be diminished. He added that a slowed reaction time and slightly altered hand-to-eye coordination could be expected due to the effect of the amount of alcohol on the muscular system.
Dewayne Goodwin, an emergency medical technician who arrived at the scene immediately, testified that he came within two feet of appellant and smelled no alcoholic beverages. He recalled smelling a mixture of other odors including diesel fuel. However, Elaine Persall, the emergency room coordinator at Cullman Medical Center, insisted that she smelled alcohol as well as blood odors when she came close to the appellant at the hospital.
Lewis Bradford, a Cullman policeman, directed traffic and cleared wreckage following the accident. When traffic normalized, he left the scene and returned an hour and a half later on orders from Dwight Pope and another police investigator. Bradford, without a warrant, searched appellant's truck and discovered an unopened bottle of vodka under the mattress of a cot in the sleeper portion of the truck's cab. The district attorney prominently displayed the bottle before the jury, and the trial judge gave curative instructions and granted defense counsel's motion to exclude the bottle.
The trial court denied appellant's motion to exclude the State's evidence at the close of the State's case. After the appellant took the stand, two character witnesses testified in his behalf. The trial court submitted the case to the jury, which returned a guilty verdict of second degree manslaughter. A motion for a new trial was denied.
 I
Appellant contends that the evidence does not sustain a conviction of involuntary manslaughter. We disagree.
 "Manslaughter in the second degree is defined as the unlawful killing of another human being, without malice and without the intent to kill or to inflict the injury resulting in death, but accidentally committed by the accused while he was doing an unlawful act amounting to a misdemeanor, or accidentally committed by the accused while he was doing a lawful act, but in a grossly negligent or improper manner." (Emphasis added.) Jones v. State, 21 Ala. App. 234, 236, 109 So. 189
(1926).
Clayton v. State, Ala.Cr.App., 359 So.2d 419 (1978); Smith v.State, 56 Ala. App. 609, 324 So.2d 323 (1975); Ayers v. State,48 Ala. App. 743, 267 So.2d 533 (1972).
Whether appellant drove his truck in a manner which constituted a misdemeanor is a question for the jury to determine in light of the evidence. Smith v. State, supra;Pippin v. State, 19 Ala. App. 384, *Page 570 97 So. 615 (1923). It seems doubtful that the jury found the appellant violated the speed limit in the instant case because there was conflicting testimony, and the State failed to properly introduce the existence of a speed limit sign into evidence. At any rate exceeding the speed limit, alone, does not authorize a jury to find a person guilty of second degree manslaughter. Crisp v. State, 21 Ala. App. 449, 109 So. 282, reversed on other grounds, 215 Ala. 2, 109 So. 287 (1926).
We conclude, however, that the jury in this case could reasonably find that appellant was driving while intoxicated. It is a violation of the law of Alabama for "any person who is intoxicated to drive a motor vehicle upon any highway of the state." Section 32-5-170, Code of Ala. 1975. As a general rule when an intoxicated driver runs into or against another, causing death, he is guilty of manslaughter in the second degree. Clayton v. State, supra; Broxton v. State, 27 Ala. App. 298,171 So. 390 (1936); Oliver v. State, 24 Ala. App. 292,134 So. 892, cert. denied, 223 Ala. 167, 134 So. 894 (1931).
Code § 32-5-193 provides that, in any proceeding arising out of acts alleged to have been committed by a person driving a vehicle while under the influence of intoxicating liquor, the amount of alcohol in the person's bloodstream at the time of the chemical test as shown by analysis of the person's blood shall be admissible evidence and shall give rise to certain presumptions. A person with 0.05% or less by weight of alcohol in his blood is presumed not to be under the influence of intoxicating liquor, whereas a person with a 0.10% or greater level is presumed to be intoxicated. However, when a person's blood-alcohol level falls between 0.05% and 0.10%, no presumption arises, but rather "such fact may be considered with other competent evidence in determining whether the person was under the influence of intoxicating liquor." Section32-5-193 (a)(2).
In Smith v. State, supra, 56 Ala. App. at 612, 324 So.2d 323, this court quoted from Broxton v. State, supra, wherein Judge Samford wrote:
 "The taking of one or more drinks of intoxicating liquor would not of itself be sufficient to establish the fact of intoxication. The evidence must go further and show facts indicating a mental condition not normal and produced or brought about by the intoxicating liquor. When, therefore, an accident occurs on a public road in which a person is killed by being run over by an automobile, and it is shown that the driver has been drinking, it becomes a question for the jury to say, from all the facts and circumstances surrounding the homicide, whether or not the driver at the time of the accident was under the influence of liquor, and, if so, was that condition the proximate cause of the homicide. If these facts be proven to the satisfaction of the jury beyond a reasonable doubt, the crime of manslaughter in the second degree would be complete."
Moreover, there is no need to distinguish between "being under the influence of intoxicating liquors" and "being intoxicated." As Judge Samford commented in Holley v. State,25 Ala. App. 260, 261, 144 So. 535 (1932):
 "The difference is that of `Tweedle dee and Tweedle dum.' . . . There are perhaps as many stages of intoxication as there are varieties of Heinz pickles, and the party affected rarely knows when he passes from one to another. But, in whatever stage he is, if he drives a vehicle upon the public road he becomes a menace to the public and subjects himself to the penalties of the statute."
The testimony and report of the state toxicologist and appellant's own admission are sufficient evidence from which the jury could reasonably infer that the appellant was committing a misdemeanor which resulted in the death of the deceased. The guilt of this appellant was not overwhelmingly established by the evidence. Nevertheless, after careful consideration we believe the evidence presented questions for the determination of a jury and was sufficient, if believed, to sustain the verdict. *Page 571 
 II
At the close of the State's case, appellant moved to exclude any evidence as to the crime of manslaughter in the first degree, arguing that the State did not present sufficient evidence to support the charge. Appellant argues that this motion was improperly denied by the trial judge.
It is unnecessary to determine the correctness of the trial court's ruling on the motion concerning first degree manslaughter. The jury in finding appellant guilty of a lesser offense acquitted him of the offense of first degree manslaughter. Only the charge upon which a conviction results is subject to appellate review. Hammond v. State, Ala.Cr.App.,354 So.2d 280, cert. quashed, Ala., 354 So.2d 294 (1977);Stringer v. State, Ala.Cr.App., 372 So.2d 378, cert. denied, Ala., 372 So.2d 384 (1979).
 III
Appellant argues that the trial court erred in denying his motion for mistrial raised during the closing argument of the prosecution. That argument relates to the prior testimony of State's witness Officer Lewis Bradford who testified that after the accident he discovered an unopened fifth of vodka under the mattress of a cot located in the sleeper part of appellant's truck. Appellant was receiving treatment at the hospital and was not arrested or charged at that time. The following portions of Officer Bradford's testimony established the sequence of events on this issue:
 "Q. [By the prosecutor] What did you find or see in the truck?
 "A. I found a fifth of Seagram's Vodka, I mean Smirnoff Vodka.
"Q. And, was it opened?
 "A. No. . . . . .
"Q. And gave it to Freddie Day at the police station?
"A. Yes, sir.
 "MR. MCPHERSON: Just a minute. Judge, I am going to object about any questions on this. There has been no proper predicate laid at this point to the introduction. If I can approach the bench I am going to state why.
 "THE COURT: Mr. Bland, come around. "(Off the record discussion.)
"THE COURT: I sustain it at this point."
It is clear from the above excerpts that the testimony about finding the unopened vodka bottle was first admitted without objection. A later reference to what Bradford did with the bottle brought on a defense objection which was sustained after an off-the-record discussion between counsel and the trial judge. Although the record is not clear on this point, it appears that counsel was objecting to a possible introduction of the bottle into evidence for lack of a proper predicate.
During further questioning of Officer Bradford by the prosecution, the following occurred:
"Q. Then, did you go check the truck by yourself?
"A. Yes, sir.
 "Q. Is that at the time that you found the bottle of whiskey in the sleeper?
"MR. MCPHERSON: We object, may it please the Court.
 "Q. (By Mr. Bland:) All right. At that time when you went back just tell the jury what you found.
"A. That is when I found the vodka.
"Q. Was anybody with you?
"A. No, sir."
The above objection was general, but appeared to be directed to the form of the question. Whether counsel intended his objection to go to the question of search and seizure, irrelevance, or to some other ground, we cannot determine. Obviously, the trial judge could likewise not determine the ground for he never ruled on the objection. The prosecutor merely acknowledged the objection and rephrased the question in a different form. The answer to that question, "[t]hat is when I found the vodka," came in without objection. Subsequently, on cross-examination defense counsel went into the matter of finding the vodka in his client's truck, emphasizing the fact that the bottle was unopened and that the seal had not been broken. *Page 572 
Later, when the State attempted to offer the bottle itself into evidence, defense counsel objected on grounds that it was the fruit of an illegal search and seizure. The prosecutor then withdrew his offer of introduction, and the following took place:
 "THE COURT: Put it back in the sack and get it out of the sight of the jury.
 "MR. MCPHERSON: Would you instruct the jury that they are not to consider that at this point?
 "THE COURT: Ladies and gentlemen of the jury, this bottle of vodka has been prominently displayed here and it is not evidence. It is not any evidence for you to consider.
"MR. BLAND: Just the bottle.
"THE COURT: This bottle right here."
The prosecutor's argument complained of, along with defense objections, is set out in context:
 "What I will tell you, ladies and gentlemen of the jury, is you have got a case here where a man's eyesight and his muscular coordination is not right. It is off. It is not normal. To what extent — it makes no difference. He has voluntarily put alcohol in his blood and got under the wheel of this truck. That together with all of the rest of it — all of the evidence he has shown a total and wanton disregard for every human life that he met on this highway from Water Valley, Mississippi, until he killed Carey Weeks out there. "We don't know. We only have his word that he only drank a third of a pint of whiskey.
 "When he got to the wreck there was still a fifth of a bottle of vodka in the truck at that time.
 "MR. MCPHERSON. Your Honor, may it please the Court, I object to this.
"MR. BLAND: That is undisputed.
 "MR. MCPHERSON: Your Honor has ruled that that is inadmissible and does not form any of the issues in this case. And, I object to it. And, it is improper. And, I ask you to instruct the jury about references about anything that was found. You have excluded that from the jury's consideration and I object to it.
 "MR. BLAND: I beg his pardon, Judge, that testimony is not excluded. Only the bottle.
 "MR. MCPHERSON: I further object and now move for a mistrial, may it please the Court.
 "THE COURT: The objection is overruled and the motion is denied." (Emphasis added.)
We find no error on the part of the trial judge in this instance. In summation arguments to the jury, counsel for both sides may comment on the evidence presented and may draw proper inferences and deductions from evidence introduced at trial.Speigner v. State, Ala.Cr.App., 369 So.2d 39, cert. denied, Ala., 369 So.2d 46 (1979). Here, the prosecution was commenting on a fact which had been admitted into evidence without objection-the finding of the vodka in appellant's truck. Conleyv. State, Ala.Cr.App., 354 So.2d 1172 (1977); 6A Alabama Digest
Criminal Law § 720 (3). The fact that the bottle itself was not admitted or was excluded from evidence does not prevent the prosecutor from commenting on evidence of its discovery which was admitted into evidence without objection. See: Hill v.State, Ala.Cr.App., 366 So.2d 296, affirmed, Ala.,366 So.2d 318 (1978).
In any event, we hardly see the prejudice to appellant in finding an unopened bottle of vodka in his truck when (1) he freely admitted on the witness stand that he had consumed a quantity of vodka earlier in the day before the accident, (2) his blood test showed a considerable level of alcohol content, and (3) he smelled of alcohol on being admitted to the hospital shortly after the accident. Alabama Rules of Appellate Procedure, Rule 45.
 IV
Appellant further argues that the trial judge improperly refused two of his requested charges. Appellant contends that these charges were correct statements of law and not substantially covered by the trial court's oral charge.
Charge No. 2 is an affirmative charge with hypothesis: *Page 573 
 "I charge you, members of the jury, that if you believe the evidence in this case, you should find the Defendant not guilty of manslaughter in the first degree."
The jury acquitted the appellant of the first degree homicide charge and, therefore, the question is moot as to whether or not the trial judge erred in refusing the above charge concerning that offense. Hammond, supra; Stringer, supra.
Charge No. 4 is as follows:
 "The Court charges the jury that if the jury believes that any witness has testified falsly (sic), as to any material fact, the jury is authorized in the exercise of it's (sic) discretion to reject the whole or any part of the testimony of the witness."
We deem the substance of that charge to be fairly and substantially covered in the following portion of the trial court's oral charge:
 "You, Ladies and Gentlemen, must take the testimony of the witnesses together with all proper and reasonable inferences therefrom and apply your common sense and in an honest and impartial way you determine what you believe to be the truth. You should weigh all of the evidence and reconcile it, if you possibly can do so. But if there be irreconcilable conflict in the evidence you take that evidence which you think is worthy of credit and give it just such weight as you think it should have. You may take into consideration any interest that any witness might have in the outcome of this case. If you believe that any material part of the evidence of any witness is willfully false you may disregard all of the testimony of such witness.
 "If any witness testifying has been impeached then the Jury may disregard his testimony, unless his testimony be corroborated by other testimony not so impeached."
Section 12-16-13, Code of Ala. 1975; Snipes v. State, Ala.Cr.App., 364 So.2d 424 (1978).
AFFIRMED.
All the Judges concur.