James Thomas CAHILL,
Petitioner-Appellee,

v.

Ruth RUSHEN, Director, California
Department of Corrections,
Respondent-Appellant.

No. 81–4009.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 14, 1981.

Decided June 2, 1982.

Mark L. Christiansen, Deputy State Public Defender, Sacramento, Cal., for petitioner-appellee.

Before WALLACE and SCHROEDER, Circuit Judges, and HENDERSON,* District Judge.

SCHROEDER, Circuit Judge:

Appellee James Cahill was convicted of first degree murder in California state court in February 1975, after a trial in which his confession to a police officer was admitted into evidence. After exhausting available state remedies, Cahill petitioned the court below for a writ of habeas corpus under 28 U.S.C. § 2254. The district court granted the writ on the ground that the State had interfered with Cahill's sixth amendment right to counsel. *Cahill v. Rushen*, 501 F.Supp. 1219 (E.D.Cal.1980). We affirm because we conclude that the confession was "deliberately elicited from him after he had been indicted and in the absence of his counsel." *Massiah v. United States*, 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246 (1964).

## FACTS

In 1972 Cahill was arrested on suspicion of murder in connection with the death of an accomplice in a check forgery scheme. Beginning soon after his arrest, Cahill, without the assistance of counsel, was questioned by Captain Carter of the Shasta County Sheriff's Office on at least four separate occasions. He was apprised of and waived his *Miranda* rights on the first three occasions; on the fourth, which took place the day the indictment was handed down, *Miranda* warnings were not given. Cahill expressed a desire for counsel during that interview, but when it proceeded, promised that after trial he would tell the captain all that had transpired at the scene of the crime.

Shirley A. Nelson, Deputy Atty. Gen., Sacramento, Cal., for respondent-appellant.

---

* Honorable Thelton E. Henderson, United States District Judge for the Northern District of California, sitting by designation.

The day after Cahill was convicted and sentenced, Captain Carter had him brought from the jail to the Sheriff's Office. The captain did not offer Cahill an opportunity to consult with his attorney, did not give *Miranda* warnings, and did not inform Cahill's attorney that the meeting was to take place. Cahill confessed to the crime, expressing his belief that a confession at that point could have no adverse consequences. It was this confession that was admitted into evidence at the subsequent trial, which resulted in the conviction challenged here.

Cahill's first conviction was reversed on appeal because the principal witness was another accomplice who was present at the scene of the crime, and no accomplice instruction had been given to the jury.[1] Cahill was then rearraigned and retried under the same outstanding indictment. The trial court denied his motion to suppress the confession.

At the retrial, the accomplice again testified for the prosecution. In addition, Captain Carter testified regarding the confession. The jury returned a verdict of guilty. Cahill exhausted state remedies before filing this habeas petition. The State appeals from the district court's judgment granting the writ.

## DISCUSSION

The narrow question presented is whether the interview with Captain Carter violated Cahill's right to counsel, thus rendering the confession inadmissible.

It is by now well settled that the sixth and fourteenth amendments bar the use at a subsequent trial of incriminating statements which the government has deliberately elicited from the defendant after indictment and in the absence of counsel. *United States v. Henry*, 447 U.S. 264, 274, 100 S.Ct. 2183, 2189, 65 L.Ed.2d 115 (1980); *Rhode Island v. Innis*, 446 U.S. 291, 300 n.4, 100 S.Ct. 1682, 1689 n.4, 64 L.Ed.2d 297 (1980); *Brewer v. Williams*, 430 U.S. 387, 401, 97 S.Ct. 1232, 1240, 51 L.Ed.2d 424 (1977); *Massiah, supra*, 377 U.S. at 207, 84 S.Ct. at 1203.

This case falls squarely within that rule. At the time of the confession Cahill had been arrested, arraigned, and indicted; thus, the right to counsel clearly had attached. *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972) (plurality opinion). The confession was "deliberately elicited" by Captain Carter, as the state properly conceded at oral argument. Finally, it is undisputed that Cahill's counsel was not only absent, but completely unaware that the meeting was to take place.

Thus the only question remaining for resolution is whether the analysis or the conclusion compelled by *Massiah* is in any way affected by the fact that when the interview took place, Cahill had been convicted and sentenced for the first time and the confession therefore was admitted not at the first trial but upon retrial.

The State and the dissent treat this case as though the question presented were whether the right to counsel "extends beyond" the first trial. We believe such an approach is fundamentally flawed. While the interview occurred after the first trial and before the first appeal, Cahill does not complain of anything that happened at that trial, nor is he asserting any right to counsel in connection with an appeal. He complains of the admission of his confession at the second trial. The question before us, then, is whether the interview with Captain Carter violated Cahill's right to counsel with respect to the second trial. We therefore do not view the case in terms of an "extension" of the right to counsel after a first trial. Rather, we must focus on the need to preserve the protections of the sixth amendment in any trial in which conviction might result.

---

1. *People v. Cahill*, 3 Crim. 6850 (Oct. 29, 1974) (unpublished opinion). The appellate court relied on *People v. Gordon*, 10 Cal.3d 460, 110 Cal.Rptr. 906, 516 P.2d 298 (1973), in which the state Supreme Court held that when the evidence suggests that the crime may have been committed by either the witness or the defendant, but not necessarily by both, the jury must be given an accomplice instruction.

The right to counsel is vital to the fair administration of our adversary system of criminal justice. "Whatever else it may mean, the right to counsel ... means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him —'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Brewer, supra*, 430 U.S. at 398, 97 S.Ct. at 1239, *quoting Kirby, supra*, 406 U.S. at 689, 92 S.Ct. at 1882.

■ The right to counsel reaches anything necessary to assure a meaningful defense. *United States v. Wade*, 388 U.S. 218, 225, 87 S.Ct. 1926, 1931, 18 L.Ed.2d 1149 (1967).

> [I]n addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial.... It calls upon us to analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and ability of counsel to help avoid that prejudice.

*Id.* at 226–27, 87 S.Ct. at 1931–32 (emphasis added) (footnotes omitted); *Coleman v. Alabama*, 399 U.S. 1, 7, 90 S.Ct. 1999, 2002, 26 L.Ed.2d 387 (1970) (plurality opinion).

When as here, a confrontation occurs prior to trial, the Supreme Court has sanctioned a retrospective evaluation. The issue is whether the "interview *proved to be* a 'critical stage' of the aggregate proceedings against [the defendant]." *Estelle v. Smith*, 451 U.S. 454, 471, 101 S.Ct. 1866, 1877, 68 L.Ed.2d 359 (1981) (emphasis added). When that test is applied here the answer must be in the affirmative.

The decision of the Supreme Court in *United States v. Ash*, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), supports affirmance here, not reversal as contended by the State. That case held that a post-indictment photographic display for purposes of identification was not a "critical stage" of the prosecution such that defendant was entitled to the presence of counsel. The Court considered whether counsel could have been of much assistance to the defendant at the display and concluded he could not, contrasting the situation in *Massiah*, where "counsel could have advised his client on the benefits of the Fifth Amendment and could have sheltered him from the overreaching of the prosecution." *Id.* at 312, 93 S.Ct. at 2575.[2] This situation is like *Massiah*, not *Ash*. We must look to the function of counsel and the role to be played at the event in question. As the Supreme Court has stated, the sixth amendment requires that counsel "be provided to prevent the defendant himself from falling into traps ...." *Id.* at 316–17, 93 S.Ct. at 2577, *quoting United States v. Bennett*, 409 F.2d 888, 899–900 (2d Cir. 1969). Cahill fell into a trap. Even a brief consultation with his attorney would have corrected Cahill's erroneous impression that a confession at that point could have no adverse consequences.

The State nevertheless argues that the right to counsel which had attached at the time of indictment was cut off by the first conviction and sentencing,[3] and was not resurrected until Cahill had been rearraigned. Under the State's theory there were in effect two separate prosecutions, and this interrogation occurred after the first had ended but before the second had begun. This mechanical view has no sound basis. We point out by way of analogy that under

2. Unlike the post-indictment photographic display at issue in *Ash*, the practice used by the State here easily lends itself to abuse. This is particularly troublesome in view of one of the principal aims of the sixth amendment, which is to protect the defendant from overreaching. Second, of course, this practice may often greatly prejudice a defendant who could otherwise gain an acquittal upon retrial. Third, if not restricted, this practice would become standard operating procedure for every police department; confessions extracted immediately upon conviction would effectively obviate the necessity for retrials should defendants succeed in obtaining reversals of their initial convictions.

3. The Supreme Court has expressly rejected the argument that *fifth* amendment rights cease at the time of conviction. *Estelle v. Smith, supra*, 451 U.S. at 461–63, 101 S.Ct. at 1872–73.

double jeopardy analysis, a second trial is viewed as a continuation of the original proceeding.[4] At the time of the interview Cahill's conviction was not yet final, as subsequent developments demonstrated. He had been indicted and continued in custody. There is no justification for the creation of a temporal hiatus in the right to counsel. Indeed, Cahill's promise to tell all had been evoked by Captain Carter at the time of indictment, so the police conduct in eliciting the confession actually began well before the first trial.

■ The danger in this case, which the sixth and fourteenth amendments guard against, is that governmental overreaching will render any subsequent trial a mere formality. As the district court recognized, if the right to the assistance of counsel evaporates upon conviction or sentencing, police behavior of this sort would make it pointless to pursue an appeal, a major goal of which is "a second trial uncontaminated by constitutional or other reversible error." *Cahill, supra,* 501 F.Supp. at 1223. The fact that he had already been convicted and sentenced when the confession was elicited, and that the confession was introduced not at the first trial but upon retrial after reversal of the first conviction, is thus constitutionally irrelevant. The State cites no authority whatever for the proposition that conduct constitutionally impermissible prior to a first trial is somehow rendered constitutionally permissible when it occurs prior to a retrial. Such a rule would undercut the sixth amendment right to counsel.

■ We emphasize the narrowness of our holding. When as here defendant's right to counsel has attached, any incriminating statements deliberately elicited by the State without at least affording defendant the opportunity to consult with counsel, must be excluded at any subsequent trial on the charges for which defendant is then under indictment.

The record before us leaves no room for doubt that Cahill was prejudiced by the State's use of his confession at trial. The first conviction was reversed because the jury had not been admonished to consider potential bias on the part of the State's principal witness. At the second trial, the jury was presented with the testimony of a police officer that Cahill had confessed to the murder. Without the latter testimony, we cannot say whether Cahill would have been convicted by a properly instructed jury.

The State argues that Cahill waived his sixth amendment rights when at the pre-trial conversation with Captain Carter he promised to "tell all" after the trial was over. The question of waiver is not one of fact but of federal constitutional law. "[I]t was incumbent upon the State to prove 'an intentional relinquishment or abandonment of a known right or privilege.' ... [T]he right to counsel does not depend upon a request by the defendant, ... and ... courts indulge in every reasonable presumption against waiver ...." *Brewer, supra,* 430 U.S. at 404, 97 S.Ct. at 1242, *quoting Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). "[T]o be valid such waiver must be made with an apprehension of ... all ... facts essential to a broad understanding of the whole matter." *Von Moltke v. Gillies,* 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948).

■ We agree with the district court that there is no evidence to suggest that Cahill was ever informed or otherwise aware of his right to the assistance of counsel during the interview in question. As observed by the district court, his misapprehension of the possible consequences "shows the very need for counsel that *Massiah* seeks to protect." 501 F.Supp. at 1230.

4. *Kepner v. U. S.,* 195 U.S. 100, 134, 24 S.Ct. 797, 806, 49 L.Ed. 114 (1904) (Holmes, J., dissenting), *cited with approval in Price v. Georgia,* 398 U.S. 323, 327, 90 S.Ct. 1757, 1760, 26 L.Ed.2d 300 (1970). While it is true that this is not the only proper analytical basis for allowing retrials over double jeopardy objections,

*see Burks v. United States,* 437 U.S. 1, 15 & n.9, 98 S.Ct. 2141, 2149 & n.9, 57 L.Ed.2d 1 (1978), its utility is widely accepted in double jeopardy analysis. *See, e.g.,* Note, *Constitutional Law—United States v. DiFrancesco: "Continuing Jeopardy"—An Old Concept Gains New Life,* 60 N.Car.L.Rev. 425 (1982).

The State has thus failed to meet its burden of establishing a waiver by Cahill of his sixth amendment rights. The post-trial confession was used against him in violation of his right to the assistance of counsel.

For the reasons stated in this opinion, the judgment of the district court is affirmed.

WALLACE, Circuit Judge, dissenting:

The district court in this case held that the rule of *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) (*Massiah*), applies at least until the filing of a notice of appeal in a criminal prosecution. *Cahill v. Rushen*, 501 F.Supp. 1219, 1224 (E.D.Cal.1980). I would hold this to be an improper application of *Massiah*. While the majority asserts that the case presents a "narrow issue," it extends the district court's erroneous interpretation by holding that the *Massiah* doctrine applies to statements deliberately elicited from a convicted defendant, at least without the prior advice of counsel, that are used "at any subsequent trial on the charges for which the defendant is then under indictment." Thus, the majority compounds the district court's error by applying the sixth amendment *Massiah* rule to a confrontation between a defendant and law enforcement authorities that occurs not only after a jury verdict, after a judgment of conviction, and after sentencing, but also after the filing of an appeal.

The sixth amendment, however, has absolutely no application to events such as these that take place outside of the courtroom subsequent to sentencing. The majority has extended both the *Massiah* doctrine and the sixth amendment away from their textual and historical roots to a situation in which neither has ever been applied before. As I read its opinion, the majority does so without a single persuasive word of justifi-

cation for such a radical extension. The sixth amendment simply was not meant to and does not apply to the confrontation in this case; Cahill's constitutional protection derives from the fifth amendment and the concomitant procedural safeguards of *Miranda*. I therefore dissent. Because the district court did not reach the *Miranda* issue, I would reverse the judgment and remand for consideration of whether Cahill's *Miranda* rights were violated.

I

On September 28, 1972, Cahill was indicted on charges of first degree murder for the brutal homicide of Scott.[1] On at least three occasions prior to the time the grand jury handed down its indictment, Cahill was questioned by Captain Carter of the Shasta County Sheriff's Department. Each time Cahill was informed of, and waived, the rights guaranteed by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (*Miranda*), but did not admit involvement in Scott's death. The day following his indictment, Cahill was again questioned by Carter, who this time failed to advise Cahill of his *Miranda* rights. During this meeting Cahill told Carter, for the second time, that he was not represented by a lawyer, but wished he were. However, he stated he did not desire the presence of an attorney during his questioning. In addition, Cahill agreed during this final pretrial meeting with Carter that after his trial, and regardless of the outcome, he would tell Carter what actually happened at the scene of the homicide.

On November 20, 1972, Cahill was convicted by a jury of first degree murder, based largely on the eyewitness testimony of Whitecotton. He waived preparation of a presentence report and was sentenced immediately. The following day Carter had

---

1. The victim was stabbed fifteen times in the body and struck in the head eighteen times with a blunt instrument. According to the testimony of eyewitness Whitecotton, these wounds were inflicted by Cahill with a butcher knife and a claw hammer. Captain Carter, in relating the conversation which is the subject of this appeal, reported that Cahill told him

that after making a large laceration in the victim's chest area he observed the victim's heart still beating and considered cutting the heart out of the chest cavity. The autopsy showed the cause of death as hemorrhaging and consequent loss of blood from the multiple stab wounds.

Cahill brought from the jail to his office. During the ensuing conversation, which was mainly a narration by Cahill but which Carter admits included some questioning on his part, Cahill made good on his previous agreement to tell his story after the trial and made a full confession. Cahill's attorney was not present at this meeting, nor was he notified of it prior to the time Carter had Cahill brought from his jail cell. According to Carter, Cahill indicated during the conversation that he was willing to talk because his statements "probably would not be admissible in a later trial." Carter did not inform Cahill of his *Miranda* rights at any time during this conversation.

Cahill's conviction was subsequently reversed by the California court of appeal, which held that the trial court erred in failing to give an accomplice instruction regarding the testimony of eyewitness Whitecotton. Cahill was rearraigned and then retried in February, 1975. His pretrial motion to suppress the statements made to Carter was denied. Cahill was again convicted of first degree murder, this time with both Whitecotton and Carter testifying for the prosecution. Part of his appellate argument[2] was that the admission of his confession violated *Massiah*. The California court of appeal again affirmed, holding that *Massiah* did not apply because there had been no "interrogation" of Cahill within the meaning of *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). Cahill's petition for hearing before the California supreme court was denied in May of 1978.

Six months later, Cahill filed a petition for a writ of habeas corpus with the district court, alleging that the introduction of his confession at the second trial violated his constitutional rights under *Massiah* and *Miranda*, and that the prosecution impermissibly commented on his post-arrest silence in violation of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The district court ordered supplemental briefing of the *Massiah* and *Miranda* issues. Without ordering an evidentiary hearing, the district court granted the writ, holding that

> any statement that is deliberately elicited by law enforcement officers or their agents between sentencing and the filing of a notice of appeal, in the absence of counsel and without a waiver of counsel's presence, has been obtained in violation of the defendant's Sixth Amendment right to counsel and must be excluded upon a retrial for the same crime.

*Cahill v. Rushen, supra,* 501 F.Supp. at 1224. Because of his disposition of the *Massiah* issue, the district judge did not address the question whether Cahill's confession was secured in violation of *Miranda*. *Id.* at 1222. Finally, the district judge concluded that the improper prosecutorial comments on Cahill's post-arrest silence, in combination with the admission of his confession to Carter, were not harmless beyond a reasonable doubt. *Id.* at 1231.

II

In *Massiah*, an indicted defendant, while free on bail after retaining a lawyer and pleading not guilty, was surreptitiously questioned on behalf of federal officials by an alleged co-conspirator who had agreed to cooperate with the federal investigation. The defendant made several incriminating statements during the course of this conversation which were later admitted in evidence in spite of timely objection. His subsequent conviction was reversed by the Supreme Court. Relying on *Spano v. New York*, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959), and *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), the Court held that the sixth amendment precluded the introduction during trial of "[the defendant's] own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and

---

**2.** Cahill also raised issues relating to *Miranda* rights and improper prosecutorial comments on his direct state appeal. Thus, he has exhausted his state remedies and is entitled to federal habeas review of these issues. 28 U.S.C. § 2254(b), (c). *Cf. Rose v. Lundy,* — U.S. —, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (petitions presenting both exhausted and unexhausted claims must be dismissed).

in the absence of his counsel." *Massiah*, 377 U.S. at 206, 84 S.Ct. at 1203. Justice White argued in dissent that there was no need for the Court to fashion this new, prophylactic exclusionary rule. In his view, the fifth amendment's protection against involuntary confessions was sufficient. *Id.* at 207–13, 84 S.Ct. at 1203–06. Although, as this might suggest, *Massiah* has often been seen only as a stepping stone to the Court's landmark decision in *Miranda*, the Court strongly reaffirmed the continuing validity of the *Massiah* doctrine in two recent cases. *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980); *Brewer v. Williams, supra.* Unfortunately, neither *Massiah* itself nor the Court's subsequent decisions in *United States v. Henry* and *Brewer v. Williams* shed much light on the issue presented in this case.

I begin by observing that, while its "doctrinal underpinnings ... have been largely left unexplained," *United States v. Henry, supra*, 447 U.S. at 290, 100 S.Ct. at 2197 (Rehnquist, J., dissenting), the *Massiah* rule is undeniably one aspect of a defendant's sixth amendment right to counsel. Considerations of coercion, which are relevant to the fifth amendment privilege against self-incrimination, and considerations of "custodial interrogation," which are relevant to a defendant's rights under *Miranda*, are largely immaterial to *Massiah*. *See Rhode Island v. Innis*, 446 U.S. 291, 300 n.4, 100 S.Ct. 1682, 1689 n.4, 64 L.Ed.2d 297 (1980). The right to counsel upon which *Massiah* is based must be distinguished from the right to counsel guaranteed by *Miranda* as an ancillary means of protecting a defendant's fifth amendment rights. *See Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981); *United States*

*v. Brown*, 569 F.2d 236, 240 (5th Cir. 1978) (en banc) (Simpson, J., dissenting). Unlike *Miranda*, the *Massiah* doctrine "rests squarely on interference with [the sixth amendment] right to counsel." *United States v. Henry, supra*, 447 U.S. at 270, 100 S.Ct. at 2186. In addition, if *Massiah* were to apply to the facts of this case, I would agree with the majority that each of the elements of the *Massiah* rule, as the district court concluded, is present in this case: Cahill's confession was "deliberately elicited" by Carter, after Cahill's indictment, in the absence of Cahill's attorney. I assume for the purpose of discussion, therefore, that if *Massiah* applies to this case we are required to affirm the district court and permit the writ of habeas corpus to issue.[3]

The majority's analysis of the issue presented leaves me unpersuaded. The majority states that "[t]he question before us ... is whether the interview with Captain Carter violated Cahill's right to counsel with respect to the second trial. We therefore do not view the case in terms of an 'extension' of the right to counsel after the first trial." The majority does not hold to this initial analysis, however, but changes the ground rules and advises that "[t]he issue is whether the 'interview *proved to be* a "critical stage" of the aggregate proceedings against [appellee].'" *Estelle v. Smith*, 451 U.S. 454, 471, 101 S.Ct. 1866, 1877, 68 L.Ed.2d 359 (1981) (emphasis added)." And arguing by analogy to double jeopardy analysis, the majority then states that "a second trial is viewed as a continuation of the original proceedings." This inability to phrase the issue presented in any consistent manner simply illustrates the strained and groping analysis the majority applies in an

3. The California courts, relying on *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), held that Cahill's confession was not "deliberately elicited" because there had been no "interrogation." Relying on *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), the district court concluded that a *Massiah* violation does not require "interrogation." Because I would decline to extend *Massiah* past a defendant's conviction and sentencing, I would not decide to what extent, if any, *Brewer v. Williams* modi-

fied *Massiah* or was in turn modified by *United States v. Henry*. *See United States v. Bagley*, 641 F.2d 1235, 1238 n.3 (9th Cir. 1981). *Compare Snead v. Stringer*, 454 U.S. 988, ——, 102 S.Ct. 535, 536, 70 L.Ed.2d 402 (1981) (Rehnquist, J., dissenting from denial of certiorari), *with Rhode Island v. Innis*, 446 U.S. 291, 300 n.4, 100 S.Ct. 1682, 1689 n.4, 64 L.Ed.2d 297 (1980). The State has conceded for the purpose of this appeal that Cahill's confession was deliberately elicited by Carter.

attempt to fit *Massiah* to the facts of this case.

I find the issue clear. This case squarely presents the question whether *Massiah* should be extended away from its origins, namely pretrial confrontations between the police and defendants against whom formal proceedings have been initiated, to the other side of the criminal trial. Here, Cahill's confession was deliberately elicited from him, in the absence of his counsel, only after his trial had been completed, after the jury had returned its verdict of guilty, and after he had been sentenced. Because I conclude that such a post-trial confrontation between a convicted defendant and the authorities is not a "critical stage" of the prosecution in which the presence of counsel is necessary to ensure the fairness of the trial itself, and because I am firmly convinced that the role of appellate counsel is significantly different, in a constitutional sense, from the role of trial counsel, I would refuse to extend *Massiah* to these facts. Without deciding the scope, if any, of a defendant's sixth amendment right to counsel on appeal, I would hold that the *Massiah* component of a defendant's sixth amendment right ends at least when his sentence is imposed. Whatever right a convicted and sentenced defendant has to the presence of counsel during police-initiated questioning or interrogation is provided not by *Massiah* and the sixth amendment, but rather by *Miranda* and its progeny as an ancillary means of safeguarding the effective exercise of the fifth amendment privilege against self-incrimination.

### A.

I start with the language of the Constitution itself. The sixth amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." It does not belittle the other constitutional rights enjoyed by criminal defendants to state that this right to counsel is perhaps the most important of all. Otherwise, the basic integrity of our criminal justice system would be suspect. Were the state able to marshal its formidable resources against those accused of committing crimes and force them to stand alone while their life and liberty is in jeopardy, there could be no assurance that those sent to prison were indeed guilty of the offenses charged. In the persuasive words of Justice Sutherland:

> Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.

*Powell v. Alabama, supra*, 287 U.S. at 69, 53 S.Ct. at 64. The sixth amendment, therefore, guarantees at least that no person shall be forced to stand alone against the state during his or her criminal trial. The right to counsel is "a fundamental right, essential to a fair trial," so basic to our adversarial system of criminal justice that it requires the appointment of an attorney for indigent defendants whenever imprisonment is imposed. *Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979). *See also Argersinger v. Hamlin*, 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530 (1972).

It is clear, on the other hand, that the principle of the sixth amendment right to counsel is not static. It has grown and developed over time. *Compare Betts v. Brady*, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942), *with Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (overruling *Betts*). Nonetheless, the core purpose of this constitutional safeguard relates to the trial itself. The fundamental role of the right to counsel is to guarantee

assistance of counsel at trial, when the defendant is confronted with both the intricacies of the law and the advocacy and power of the state. *United States v. Ash*, 413 U.S. 300, 309, 93 S.Ct. 2568, 2573, 37 L.Ed.2d 619 (1973). The sixth amendment has thus been extended to pretrial confrontations between the state and the accused only when those "pretrial events . . . might appropriately be considered parts of the trial itself." *Id.* at 310, 93 S.Ct. at 2574. This method of expansion has been an "historical" one; the Court "has expanded the constitutional right to counsel only when new contexts appear presenting the same dangers that gave birth initially to the right itself." *Id.* at 311, 93 S.Ct. at 2574. Thus, "in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *United States v. Wade*, 388 U.S. 218, 226, 87 S.Ct. 1926, 1931, 18 L.Ed.2d 1149 (1967) (footnotes omitted). Although the right attaches only after a "prosecution," in the constitutional sense, has been initiated, *see Kirby v. Illinois*, 406 U.S. 682, 688–89, 92 S.Ct. 1877, 1881–82, 32 L.Ed.2d 411 (1972), it applies to any and all subsequent "critical stages" of the prosecution where the presence of counsel is necessary to protect the fairness of the trial itself. *E.g., Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) (preliminary examinations); *United States v. Wade, supra* (post-indictment lineups); *White v. Maryland*, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) (preliminary hearings); *Hamilton v. Alabama*, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961) (certain arraignments).

Analyzing the issue presented here in an historical context as taught by *United States v. Ash*, I might well conclude that the sixth amendment right to counsel terminates once a defendant has been convicted and sentence has been imposed. It is settled that there is no constitutional right to appeal a criminal conviction. *See Ross v. Moffitt*, 417 U.S. 600, 611, 94 S.Ct. 2437, 2444, 41 L.Ed.2d 341 (1974) (per curiam);

*McKane v. Durston*, 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894). Indeed, it was not until 100 years after the Constitution was ratified that the defendant in a federal criminal prosecution, even for a capital offense, was afforded appellate review as a matter of right by statute. *Carroll v. United States*, 354 U.S. 394, 400, 77 S.Ct. 1332, 1336, 1 L.Ed.2d 1442 (1956). From this it could be asserted that if the Constitution does not guarantee an appeal, it does not guarantee the lesser right of appellate counsel, and that if there is no sixth amendment right to appellate counsel, there can be no *Massiah* sixth amendment right while a conviction is on appeal. *Cf. Wainwright v. Torna*, —— U.S. ——, ——, 102 S.Ct. 1300, 1301, 71 L.Ed.2d 475 (1982) (per curiam). Cahill, however, insists that the sixth amendment right to counsel "attaches at the critical stage of a criminal prosecution and continues through the first appeal of right." His only authority for the proposition that the right to counsel extends to the first appeal is *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). Yet even a cursory review of that opinion reveals that the Court did not base its decision, under which a state must furnish appointed counsel for indigents on a first appeal as of right, on the sixth amendment, but rather on the equal protection and due process clauses. *Douglas v. California, supra*, 372 U.S. at 360–61, 83 S.Ct. at 818 (Harlan, J., dissenting); *see Ross v. Moffitt, supra*, 417 U.S. at 608–09, 94 S.Ct. at 2442–43; *Griffin v. Illinois*, 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956).

I would not, however, decide under what circumstances, if any, the sixth amendment right to counsel attaches on appeal. Nor would I decide when, for sixth amendment purposes, a criminal "prosecution" ends. *Cf. Bradley v. United States*, 410 U.S. 605, 609, 93 S.Ct. 1151, 1154, 35 L.Ed.2d 528 (1973) (under federal statute, prosecution terminates once sentence is imposed). Rather, I would only decide that the protection afforded a criminal defendant by *Massiah* should not be extended past conviction and sentencing. In other words, I would

hold that a post-trial confrontation between a convicted defendant and law enforcement authorities, in which the authorities deliberately elicit incriminating statements from the defendant that are subsequently used to convict him in a later retrial for the same offense under the same indictment, is not a "critical stage" of the prosecution in which the presence of counsel is necessary to protect the integrity and fairness of the trial itself. *See United States v. Ash, supra*, 413 U.S. at 321–22, 93 S.Ct. at 2579–80 (Stewart, J., concurring).

### B.

I base my conclusion largely on the fact that "there are significant differences between the trial and appellate stages of a criminal proceeding." *Ross v. Moffitt, supra*, 417 U.S. at 610, 94 S.Ct. at 2443. Although he discounted its significance, the district judge aptly summarized this functional distinction between the role of trial and appellate counsel.

> *Massiah* seeks to protect the right of a defendant to the advice of counsel as it relates to the gathering and introduction of evidence at trial. Once judgment and sentence have been imposed, the function of the attorney changes even if a continuing legal relationship between the defendant and his attorney exists. This function includes marshalling an adequate record on appeal and arguing the prejudicial effect of alleged errors at the first trial. Permitting law enforcement [officers] to gather information from the defendant would not interfere with *this* relationship and thus *Massiah* should not apply.

*Cahill v. Rushen, supra*, 501 F.Supp. at 1223 (emphasis in original). This functional distinction compels the conclusion that such post-trial confrontations between the state and the defendant are not "critical stages" of the prosecution where counsel's presence is necessary to ensure the integrity of the trial. They cannot "appropriately be considered parts of the trial itself." *United States v. Ash, supra*, 413 U.S. at 310, 93 S.Ct. at 2574.

In the pretrial area, there are two major reasons why a particular confrontation between the unrepresented accused and the state may derogate from the fairness of the trial. First, the accused may be required to attend a formal proceeding in which he is asked to enter a plea, *see, e.g.,* Hamilton v. Alabama, supra, or in which the evidence against him is preliminarily summarized and a probable cause determination made, *see, e.g.,* Coleman v. Alabama, supra. In both these situations the accused's action or inaction entails definite consequences which, as a practical matter, may eliminate the trial or drastically reduce its utility for the accused. Second, certain pretrial confrontations, albeit informal in nature, involve proceedings which may embody a substantial risk of producing evidence that cannot effectively be tested for reliability through cross-examination at trial. *Compare United States v. Wade, supra, with Gilbert v. California*, 388 U.S. 263, 267, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178 (1967). In these situations, "[t]he trial which might determine the accused's fate may well not be that in the courtroom but that at the pretrial confrontation . . . ." *United States v. Wade, supra*, 388 U.S. at 235, 87 S.Ct. at 1936. Thus, throughout the expansion of the sixth amendment right to counsel to pretrial proceedings, "the function of the lawyer has remained essentially the same as his function at trial. . . . Counsel present at [the pretrial confrontation] would be able to remove disabilities of the accused in precisely the same fashion that counsel compensated for the disabilities of the layman at trial." *United States v. Ash, supra*, 413 U.S. at 312, 93 S.Ct. at 2575.

The role of counsel on appeal, on the other hand, is not "essentially the same" as his function at trial; it does not relate to the gathering and introduction of evidence at trial, to sheltering the defendant from the potential overreaching of the prosecution, or to protecting the defendant's basic rights "meaningfully to cross-examine the witnesses against him and to have the effective assistance of counsel at the trial itself." *United States v. Wade, supra*, 388 U.S. at 227, 87 S.Ct. at 1932. Rather, the

role of appellate counsel is to search the record meticulously for indicia of prejudicial legal error and to advocate those errors vigorously to a higher court as grounds for reversal. "The defendant needs an attorney on appeal not as a shield to protect him against being 'haled into court' by the State and stripped of his presumption of innocence, but rather as a sword to upset the prior determination of guilt. This difference is significant . . . ." *Ross v. Moffitt, supra,* 417 U.S. at 610–11, 94 S.Ct. at 2443–44. The introduction of evidence is at an end once an appeal is taken; generally only the trial record is relevant to appellate review. In a very real sense, therefore, I can conclude that there are no post-trial confrontations between a convicted defendant and the state which may be considered "critical stages" of the prosecution essential to the fairness of the trial, since the trial has ended.

After sentencing, there may be a "prosecution" of a case on appeal, but this is made solely on the basis of a documentary record. It is the attorney's advocacy of his client's cause that ensures the fairness of the trial which has already ended. *Cf. Ross v. Moffitt, supra,* 417 U.S. at 611, 94 S.Ct. at 2444. It is true that appellate counsel does offer a buffer between the power of the state and the legally untutored defendant before the appellate court. Thus, it might be argued that a sixth amendment right is implicated because the appellate function of counsel neutralizes "the same dangers that gave birth initially to the [sixth amendment] right itself." *United States v. Ash, supra,* 413 U.S. at 311, 93 S.Ct. at 2574. Such an extension of the sixth amendment would not assist Cahill, however, because a right to appellate counsel does not necessarily include the subsidiary *Massiah* right to the presence of counsel during police-initiated questioning in which incriminating statements are deliberately elicited. In short, even if, contrary to established precedent, the sixth amendment provides convicted defendants with the sword of appellate counsel, it does not guarantee them the shield of *Massiah.*

My conclusion is further supported by the fact that confessions secured in violation of *Massiah* cannot, for that reason alone, seriously be considered unreliable. *See United States v. Henry, supra,* 447 U.S. at 289, 100 S.Ct. at 2196 (Rehnquist, J., dissenting). Not only is the *Massiah* doctrine unrelated to the concept of compulsion, the touchstone concern of the fifth amendment, but there is no indication in this case that Cahill's confession to Carter was the product of any coercion or prosecutorial overreaching at all. Indeed, Carter's conduct in seeking to have Cahill make good on his prior agreement to tell his story after the trial seems to have been motivated only by an intense sense of curiosity about the situation giving rise to the brutal homicide involved. The majority's extension of *Massiah* to such a post-trial confrontation, therefore, where there is no indication of improper prosecutorial conduct, only magnifies the extent to which the doctrine itself, in effect, stands as an absolute barrier to confessions. *See Massiah,* 377 U.S. at 209, 84 S.Ct. at 1204 (White, J., dissenting). Moreover, extending *Massiah* to this situation does not, even marginally, further the purpose served by excluding improperly obtained evidence from criminal trials. *See Brewer v. Williams, supra,* 430 U.S. at 424–26, 97 S.Ct. at 1252–53 (Burger, C. J., dissenting). After all, once an accused is convicted of the crime charged, law enforcement authorities have no realistic need to act "unconstitutionally" in order to gather evidence to be used in a retrial until there is at least a possibility that the conviction may be overturned on appeal. Whether the fairness of the retrial or an unstated deterrence rationale underlies the majority's conclusion, therefore, neither is implicated *until* a notice of appeal is filed; before then, a retrial is almost, if not absolutely, a legal impossibility. The majority's conclusion that *Massiah* should apply between the imposition of sentence and the initiation of an appeal is thus supported neither by the law of the sixth amendment nor the logic of the exclusionary rule.

The interests of criminal defendants at post-trial confrontations with the state can

adequately be protected by the fifth amendment's privilege against compelled self-incrimination and the concomitant procedural safeguards of *Miranda*. As the majority so clearly realizes, the only advice a lawyer could have given Cahill prior to or during his meeting with Carter was not to confess, *i.e.*, to remain silent. Accordingly, the function of counsel at such a post-trial confrontation would lie not in protecting the interest furthered by the sixth amendment, the interest in a fair trial, but rather in protecting the interest furthered by the fifth amendment, a defendant's interest in a trial free from his own inculpatory statements absent a knowing and voluntary waiver of his privilege against self-incrimination. The right to counsel provided by *Miranda*, which "guarantee[s] full effectuation of the privilege against self-incrimination," *Johnson v. New Jersey*, 384 U.S. 719, 729, 86 S.Ct. 1772, 1778, 16 L.Ed.2d 882 (1966), applies any time a criminal suspect is subject to "custodial interrogation," and not merely to those "critical stages" of the prosecution after formal proceedings have been initiated against the accused. For example, an accused enjoys the right under *Miranda* to have his counsel present during custodial interrogation, and once he invokes that right he may not be subjected to further police-initiated questioning until counsel has been made available to him. *Edwards v. Arizona, supra*, 451 U.S. at 483–85, 101 S.Ct. at 1884–85. Further, where a defendant's inculpatory statements are the product of custodial interrogation, they may not be introduced against him at trial unless the state shoulders its heavy burden of proving that he was informed of his rights under *Miranda* and that he knowingly and intelligently waived those rights. *See United States v. Martinez*, 588 F.2d 1227, 1235 (9th Cir. 1978); *United States v. Nixon*, 571 F.2d 1121 (9th Cir. 1978).

By their very nature, these rights guaranteed by *Miranda* cannot end upon conviction and sentencing; when a convicted defendant remains in "custody," he may assert his fifth amendment privilege whenever the state seeks to interrogate him. *See Mathis v. United States*, 391 U.S. 1, 4–5, 88 S.Ct. 1503, 1504–05, 20 L.Ed.2d 381 (1968). Having been apprised of his rights, he is no longer subject to the "inherently compelling pressures," *Miranda*, 384 U.S. at 467, 86 S.Ct. at 1624, attendant to police-initiated interrogation. Since the function of the *Miranda* safeguards is to alter the relationship between the defendant and the state so as to secure the effective exercise of the fifth amendment privilege, and since those safeguards include the right to have counsel present, upon request, during questioning, I fail to see what further protection would be gained by applying *Massiah* to the post-conviction situation. Given the wide shield of *Miranda*, the risk that the absence of counsel from post-conviction questioning might derogate from the defendant's right to a fair trial is, at best, minimal. *See Gilbert v. California, supra*, 388 U.S. at 267, 87 S.Ct. at 1953.

### C.

My conclusion does not conflict with any of our previous decisions. It is true, as the district court observed, that an accused may be denied the effective assistance of counsel guaranteed by the sixth amendment by virtue of the incompetent advocacy of his lawyer on a first appeal as of right. *Cf. Wainwright v. Torna, supra*, —— U.S. at ——, 102 S.Ct. at 1301 (since a convicted defendant has no constitutional right to counsel on discretionary appeals, one cannot be denied the effective assistance of counsel by the attorney's failure to file a timely petition for discretionary review). Thus, the trial attorney may have "an affirmative duty to protect his client's right to appeal by filing a notice of appeal, or by telling his client how the client can proceed on his own behalf." *Gairson v. Cupp*, 415 F.2d 352, 353 (9th Cir. 1969). We have stated that:

[w]ere we to hold that the constitutionally protected right to the assistance of effective trial counsel ended at the moment sentence was pronounced, we would leave many criminal defendants suspended between counsel with the result that direct appeal, otherwise available, would be lost and the time consuming process of

postconviction proceedings would be begun.

*Id.* Somewhat similarly, Cahill argues, and the majority agrees, that refusing to extend *Massiah* to this case would suspend application of the sixth amendment from the time of sentencing until the "critical stages" of the prosecution preceding retrial. I emphasize, therefore, that I do not conclude that the sixth amendment right to counsel is suspended at the moment sentence is pronounced. But whatever the scope of the sixth amendment on appeal, it does not encompass the *Massiah* right to have counsel present during conversations with the authorities in which they deliberately seek to elicit incriminating statements.[4]

The function of a criminal defense attorney after conviction necessarily may include, as we held in *Gairson v. Cupp, supra,* the filing of a notice of appeal, since it is by appealing that the lawyer protects the fairness of the trial. However, it does not include, in the context of the sixth amendment, the broad "counseling function" attributed to it by the district court. *See Cahill v. Rushen, supra,* 501 F.Supp. at 1223. Certainly appellate counsel can, and should, advise his client on whether to speak with the police following conviction. A convicted defendant may wish to confess, for example, in order to seek the court's mercy at sentencing. The attorney's advice on this and other points, however, relates only to "whether [the defendant] should speak at all," *id.,* and thus implicates the fifth amendment rather than the sixth.[5] Accordingly, any right to counsel enjoyed by Cahill in this case stems from *Miranda,* not *Massiah.*

I recognize, as did the district court, that *Massiah* may be difficult to harmonize with traditional notions of the role of an attorney and with the "critical stage" test subsequently developed by the Court for sixth amendment analysis. My disagreement relates only to the manner in which the district judge sought to reconcile this apparent conflict. In my opinion, his "broader view" of *Massiah,* sanctioned by the majority, expands the sixth amendment past its historical and conceptual anchors, extending the right to counsel into an area unrelated to the concerns that prompted the initial enactment of this fundamental safeguard. If such an extension is deemed necessary, it should come from a higher authority than us.

### III

Thus, the majority initiates a dramatic expansion of the sixth amendment right to counsel without a shred of historical analysis and without any focus on the "critical stage" doctrine. Indeed, the majority insists that to "treat[ ] this case as though the question presented were whether the right to counsel 'extends beyond' the first trial" is a "fundamentally flawed" approach. Clearly, however, the majority's approach is the one that is fundamentally flawed. The majority states the issue as whether the interview "violated Cahill's right to counsel with respect to the second trial," but fails to consider whether the interview occurred at a critical stage in the proceedings during which the presence of an attorney would ensure the fairness of the trial. It is significant that the majority does not even acknowledge that the *fairness* of the trial is

---

**4.** Cahill's attorney was not given prior notification of his client's post-trial meeting with Carter. Cahill, however, has not argued that his confession is inadmissible under *Massiah* because his attorney was not notified, but because his attorney was not present. The majority's holding that *Massiah* was violated because Cahill was not provided an opportunity to consult with his attorney prior to speaking with Carter is therefore a holding on an issue not presented in this appeal. Apparently, there are situations, like that in *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981),

where the sixth amendment may require notification of the accused's counsel but not his presence. *Id.* at 470 & n.14, 101 S.Ct. at 1877 & n.14. I would not reach the issue in this case.

**5.** I do not address the possibility that *Massiah* may apply to statements which are deliberately elicited from a defendant at a post-conviction confrontation with the authorities and subsequently used at the *sentencing* phase of his trial. *Cf. Estelle v. Smith, supra.* This clearly is not such a case.

the gravamen of the sixth amendment. If it recognized this most basic principle, it would be compelled to agree that the fairness of the second trial is not at issue unless and until appellate counsel persuades an appellate court that the first trial was *unfair* and the judgment is reversed.

As I see it, the fundamental flaw in the majority's opinion is the unprincipled, nontextual, and anti-historical nature of its analysis. The sixth amendment on its face applies only to the trial; by virtue of the critical stage test, the sixth amendment has been extended to pretrial events which give rise to the same dangers which the amendment's right to the assistance of counsel was designed to avoid. Yet the sixth amendment itself provides neither a right to an appeal nor a right to a retrial. Further, neither the sixth amendment nor *Massiah* has ever been applied to such a post-trial confrontation as occurred here. The majority's "refusal to view the case in terms of an 'extension' of the right to counsel" is simply an assertion which has no basis in precedent. It is unmistakable that when a court applies a pretrial rule to a post-trial case, it is "extending" the rule. And when the extension occurs, as it does here, without anything more than naked statements unsupported by rational analysis, one wonders whether this extension can be considered anything less than result-oriented decisionmaking. In the words of Justice Rehnquist, the majority has applied "aphorisms" found in the Court's sixth amendment opinions "whose resemblance to the actual text of the Constitution grows increasingly remote as they are used as substitutes for the text itself, applied to wholly different situations than that addressed in the original case, or simply used as convenient 'catchwords' to justify a given result." *Snead v. Stringer*, 454 U.S. 988, 989, 102 S.Ct. 535, 535–36, 70 L.Ed.2d 402 (1981) (Rehnquist, J., dissenting from denial of certiorari). History and precedent, I believe, should not be so lightly disregarded.

The majority is rightfully concerned that Cahill may have been led into a trap. Yet the majority has no constitutional authority to remedy that asserted trap by extending *Massiah* on the slim reed of a dictum lifted from the Court's opinion in *United States v. Ash*. My approach applies the holding of *Ash*, which further defines the critical stage test articulated in *Wade* by emphasizing the historical approach to the sixth amendment. The majority, to my dismay, isolates one clause from the *Ash* opinion and completely ignores the central import of the Court's painstaking analysis. While *Massiah*, a pre-trial case, may well fit within the historical evolution outlined in *Ash*, the instant post-trial case clearly does not. The historical focus in *Ash*, concerned primarily with whether the attorney's role is essentially the same as his function at trial, supports only reversal here.

Undeniably, *Massiah* is not an area where the Court has left us with crystal clear instructions. I emphasize, therefore, that my dissent does not condone what happened in this case. I believe that the activities of the police in situations such as this must be carefully monitored. But since the role of counsel on appeal, from the perspective of the sixth amendment, is at best that of a sword and not a shield, I conclude that the only federal constitutional basis for monitoring such activities stems from the fifth amendment and *Miranda*.

Indeed, *Miranda* is uniquely tailored to situations like the one at issue here. If Cahill surrendered his fifth amendment privilege against self-incrimination, it can be argued that he did so only because he was under the misapprehension that his words could no longer be used against him. Had he been warned of his *Miranda* right to the advice and presence of counsel, he may well have availed himself of legal advice prior to speaking. Cahill's attorney, therefore, could have acted only to effectuate Cahill's fifth amendment right to silence. Cahill's right to counsel thus finds it origins squarely in the prophylactic fifth amendment safeguards of *Miranda*, and not in *Massiah*. By correcting Cahill's misapprehension about the admissibility of his confession through an unwarranted extension of the latter, however, the majority deci-

mates the historical, logical and policy differences between these two qualitatively different sources of the right to counsel. I do not question the majority's desire to offer constitutional protection to Cahill; I dissent because the right created is not dictated by reason, consistency or prudence.